DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Devonn Bush, appeals from his convictions in the Summit County Court of Common Pleas for attempted murder and armed robbery. We affirm.
 {¶ 2} On July 22, 2002, the Summit County Grand Jury indicted Defendant on one count of attempted murder and one count of armed robbery. Both counts contained a specification for possession of a firearm in the commission of the offense. Defendant pled not guilty and waived his right to a jury trial. The court found Defendant guilty of both counts and sentenced him accordingly. Defendant timely appeals and raises three assignments of error for review.
 ASSIGNMENT OF ERROR I
"[Defendant's] conviction for a firearm specification was against the manifest weight of the evidence[.]"
 {¶ 3} In his first assignment of error, Defendant challenges the adequacy of the evidence presented at trial. More specifically, Defendant maintains that his convictions for firearm specifications were contrary to the manifest weight of the evidence. We disagree.
 {¶ 4} In reviewing whether a conviction is against the manifest weight of the evidence, an appellate court must:
"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340. See, also, State v. Henry, 9th Dist. No. 02CA008170, 2003-Ohio-3151, at ¶ 7, quoting State v. Morton, 9th Dist. No. 21047, 2002-Ohio-6458, at ¶ 26; State v. Bortner, 9th Dist. No. 02CA008189, 2003-Ohio-3508, at ¶ 4.
 {¶ 5} This discretionary power should be exercised only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Otten, 33 Ohio App.3d at 340. Furthermore, the determination of the weight to be given both to the evidence and the credibility of witnesses is a function primarily reserved for the trier of fact. State v. McCulty, 9th Dist. No. 01CA0052, 2002-Ohio-1742, at ¶ 7, citing State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4.
 {¶ 6} Defendant argues that his conviction for a firearm specification should be reversed because the State failed to prove that the recovered firearm was operable and that it was used in the commission of the offense. Defendant emphasizes that the recovered gun is a .38 caliber, yet Marlon Grimes ("Grimes") and Deanna Hubbard ("Hubbard") testified that the gun they saw appeared to be a .22 caliber. Furthermore, Defendant maintains that the recovered gun was not processed in any way to prove that it was the actual gun used in the commission of the crime.
 {¶ 7} In order to obtain a conviction for a firearm specification, the State must establish that the "offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145(A). The State must not only prove that the firearm existed but that it was operable at the time of the offense. State v. Murphy (1990), 49 Ohio St.3d 206, 208. "However, such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." Id. at syllabus.
 {¶ 8} The Ohio Supreme Court broadened this evidentiary standard even further in State v. Thompkins (1997), 78 Ohio St.3d 380. InThompkins, the court held that the trier of fact could consider all relevant facts and circumstances surrounding the crime, including any implicit threats made by the individual controlling the firearm, in determining whether an individual possessed a firearm and whether the firearm was operable at the time of the offense. Id. at 385. Thus, the State need not actually recover the firearm used in the offense nor perform tests to prove that it was operable. See State v. Haskins, 6th Dist. No. E-01-016, 2003-Ohio-70, at ¶ 47-48 (affirming conviction for firearm specification where defendant indicated he had a firearm in his pocket, even though the victim did not see the firearm and the firearm was never found); State v. Benton (May 1, 1997), 8th Dist. No. 70415 (affirming conviction for firearm specification where witnesses saw defendant pointing and waiving a gun while committing the robbery even though the gun was not found); State v. Roberts (May 3, 1995), 1st Dist. No. C-940509 (affirming conviction for firearm specification where defendant pointed gun at victim's head although gun was never found).
 {¶ 9} The facts and circumstances surrounding the robbery, including Defendant's implicit threats, are sufficient to show that Defendant possessed an operable firearm while committing the robbery. We first note that it is beyond dispute that Grimes was shot with a firearm. Grimes identified Defendant and testified that Defendant pointed a gun at him, ordered him to "give [Defendant] everything," and shot him. Hubbard also identified Defendant and testified that she saw him shoot Grimes in the back. Anthony King ("King") testified that he saw Defendant holding a gun, that he heard Defendant tell Grimes, "Give me your shit," and that he immediately thereafter heard a gunshot. Finally, Officer Elton testified that upon asking Defendant why he shot Grimes, Defendant replied that he did not want to go to jail and that "he didn't intend to shoot anybody."
 {¶ 10} Defendant maintains that "[a] stick [lying] on the ground with a spent casing next to it yields as much information and linkage to the shooting as the recovered .38." However, based on the facts and circumstances of this case and the authorities cited above, Defendant's firearm specification convictions would be sustained even if the State submitted a stick instead of the recovered .38 caliber gun.
 {¶ 11} Upon review of the entire record and after weighing all the evidence and reasonable inferences, we cannot say that the trial court clearly lost its way in convicting Defendant of the firearm specifications. Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"The trial court erred in admitting the recovered firearm into evidence[.]"
 {¶ 12} In his second assignment of error, Defendant argues that the trial court erred in admitting the .38 caliber firearm into evidence because the State failed to establish a chain of custody for the firearm. Defendant maintains that he was severely prejudiced by the weight that the trial court gave to the gun. We disagree.
 {¶ 13} According to Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Defendant bears the burden of demonstrating that the alleged error affected his substantial rights. State v. Wright, 9th Dist. No. 02CA008179, 2003-Ohio-3511, at ¶ 6, citing State v. Biehl
(Apr. 14, 1999), 9th Dist. No. 19054, at 4.
 {¶ 14} In the instant case, Defendant has failed to demonstrate that the admission of the .38 caliber firearm affected his substantial rights. As noted above, there is no question a firearm was used in the commission of the offense. At least two witnesses identified Defendant as the shooter, and the testimony of King strongly suggests Defendant was the shooter as well. Furthermore, three witnesses described the firearm and testified that the firearm used looked like the .38 caliber admitted into evidence. Nowhere does the record reflect that the court relied upon the admission of the .38 caliber gun in reaching its decision. In fact, the trial court admitted the firearm with skepticism, stating that "[f]or whatever probative value [the .38 caliber firearm] has, the Court is going to admit it." Therefore, the admission of the .38 caliber gun was harmless error. Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"[Defendant] was denied effective assistance of counsel[.]"
 {¶ 15} Defendant argues in his third assignment of error that he was denied effective assistance of counsel in that his counsel failed to move for a Crim.R. 29(C) judgment of acquittal. We disagree.
 {¶ 16} In order to establish the existence of ineffective assistance of counsel, the defendant must satisfy a two-pronged test:
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Colon, 9th Dist. No. 20949,2002-Ohio-3985, at ¶ 48, quoting Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674.
 {¶ 17} The defendant bears the burden of proof on this matter.Colon at ¶ 49, citing State v. Smith (1985), 17 Ohio St.3d 98,100.
 {¶ 18} Prejudice entails a reasonable probability that, but for counsel's errors, the result of the trial would have been different.State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. The court is also to consider "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Colon at ¶ 49, quoting Strickland,466 U.S. at 690. An appellate court may analyze the second prong of theStrickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice. See State v. Loza (1994),71 Ohio St.3d 61, 83.
 {¶ 19} In the instant case, Defendant essentially argues that the State presented insufficient evidence to convict him of the crimes charged; therefore, his counsel should have moved for an acquittal. However, we find that the record contains sufficient evidence to support Defendant's conviction for attempted murder and armed robbery. As such, Defendant was not prejudiced by his counsel's failure to move for dismissal at the close of the State's case and at the close of the evidence. Consequently, we find that counsel's performance did not constitute ineffective assistance of counsel. Defendant's third assignment of error is overruled.
 {¶ 20} Defendant's assignments of error are overruled. The convictions in the Summit County Court of Common Pleas are affirmed.
Judgment affirmed.
WHITMORE, J. CONCUR